## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Linda Frye-Chaikin,

                    Plaintiff,        Case No. 25-13514

v.                               Judith E. Levy
                               United States District Judge

Eric Bradley, *et al.*,

                               Mag. Judge Kimberly G. Altman
                Defendants.

_____/

## OPINION AND ORDER DISMISSING STATE-LAW CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION

This case involves allegations related to litigation over a real estate transaction, and unlawful access to a booking platform. Plaintiff Linda Frye-Chaikin filed this action against Defendants Eric D. Bradley and Crystal Blue Ltd. (ECF No. 1.) Plaintiff alleges that Defendants unlawfully accessed her VRBO[1] account in violation of federal laws. (*Id.* at PageID.31–32.) Two federal statutes serve as the basis for federal question subject matter jurisdiction: the Computer Fraud and Abuse Act ("CFAA") and the Stored Communications Act ("SCA"). (*Id.*) The

---

[1] VRBO is an online marketplace for vacation rentals. VRBO, https://www.vrbo.com/ (last visited Dec. 12, 2025).

remaining twenty-five claims arise under state law, and twenty-one of them relate to a real estate transaction that has already been litigated. (*Id.* at PageID.15–32.)

The Court granted Plaintiff's Application to Proceed Without Prepaying Fees or Costs, which is otherwise known as proceeding *in forma pauperis*. (ECF No. 5.) For the reasons set forth below, the Court lacks subject matter jurisdiction over Plaintiff's state-law claims that relate to the litigated real estate transaction and dismisses those claims without prejudice.

## I. Background

Plaintiff's Complaint contains extensive and detailed allegations regarding a real estate dispute. (ECF No. 1.) The allegations span over a decade, from 2014 to 2025, and involve two jurisdictions: Michigan and the Cayman Islands. (*Id.*)

The core allegations center on a 2014 real estate transaction concerning Plaintiff's Crown leasehold interest in a condominium unit in Grand Cayman. (*Id.* at PageID.2.) Plaintiff alleges that Defendant Bradley solicited the purchase when she sought a loan for her mother's

cancer care, and that she signed a Michigan "Real estate Sales Contract" in May 2014 based on representations that a third party named "Mike" (Michael Scarfo) would pay cash to purchase the property. (*Id.* at PageID.4.) Plaintiff contends that no closing ever occurred under the 2014 contract, that material terms remained open, and that all parties acknowledged in November 2015 that the contract "did not reflect a meeting of the minds." (*Id.* at PageID.5–7.)

Plaintiff further alleges that Bradley obtained an order of specific performance in Washtenaw County Circuit Court, which she challenges as having exceeded the permissible scope of specific performance by supplying missing material terms and effectively executing a Cayman conveyance without her consent. (*Id.* at PageID.8–10.) She states that in 2023, while she was in England, Defendants prepared a new contract without her knowledge, changed the governing law to Cayman law, and fraudulently represented ownership. (*Id.* at PageID.11–12.) Plaintiff claims she never signed the 2023 contract and that in 2025, Defendants unlawfully entered the property, changed the locks, and removed her belongings. (*Id.* at PageID.12–14.)

Beyond the real estate dispute itself, Plaintiff alleges that she can no longer access her VRBO account because Defendants blocked it, declaring ownership and displaying the purportedly fraudulent 2023 contract. (*Id.* at PageID.14.) She claims she lost a paid booking for June 21–July 5, 2025 (approximately $8,000) and further lost income through February 2026 totaling approximately $58,000 for the 2025–2026 season. (*Id.*) Plaintiff also alleges she paid $330 for a tourist license and fire extinguisher service and $400 to a locksmith to re-enter the property. (*Id.*) She indicates that "VRBO was hacked in 2014," and that "later ownership changes left limited historical records available." (*Id.*)

Plaintiff additionally alleges various ancillary harms stemming from the real estate dispute, including that Defendants attempted a reverse mortgage and ignored her off-season caretaker lease that runs through December 2027. (*Id.* at PageID.14–15.) She references concerns about identity theft, noting that Bradley had access to her Social Security number and "full financials from the 2014 loan application," as well as her American Express "card number from paying part of a 'deposit' by check to her card." (*Id.* at PageID.15.) Plaintiff states she will seek IRS letters regarding a 20-year audit and prior rejected returns. (*Id.*) She

asserts that she continues to suffer from a clouded title, loss of possession and control, lost rental income, security and restoration costs, and emotional distress. (*Id.*)

The Complaint asserts twenty-five state-law claims, including: declaratory judgment[2] and quiet title claims (Counts 1–2, 10, 25); property-related tort claims including trespass, conversion, slander of title, and tortious interference (Counts 3–5, 8, 18–19, 23); equitable claims including unjust enrichment, accounting, constructive trust, enforcement of the Michigan order, and enforcement of a Cayman Islands "Charge" (Counts 6–7, 9, 11–12, 24); permanent injunctive relief[3] (Count 13); fraud-based claims including fraud, negligent misrepresentation, and civil conspiracy (Counts 14–16); statutory claims under Michigan law (Counts 17–18); and intentional tort claims including intrusion upon

---

[2] Declaratory and injunctive relief are remedies, not independent causes of action. *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2020 U.S. Dist. LEXIS 114891, at *16 (N.D. Ohio July 1, 2020) (citing *Duncan v. Tenn. Valley Auth. Ret. Sys.*, 123 F. Supp. 3d 972, 982 (M.D. Tenn. 2015), *aff'd in part by Duncan v. Muzyn*, 833 F.3d 567 (6th Cir. 2016); *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013)).

[3] *Id.*

seclusion, intentional infliction of emotional distress, and abuse of process (Counts 20–22). (*Id.* at PageID.15–31.)

Only four of those twenty-five counts are related to the unlawful access to Plaintiff's VRBO account: Permanent Injunction (Count 13) (only to the extent that Plaintiff seeks to protect exclusive control of VRBO and related accounts); "Tortious Interference with Contract and Business Expectancy" (Count 19) (only to the extent that she alleges "commandeering VRBO"); Intentional Infliction of Emotional Distress (Count 21) (to the extent that "digital commandeering" caused her severe emotional distress); and "Trespass to Chattels (Digital)" (Count 23). (*Id.* at PageID.23, 27–30.) The complaint lists two counts under federal law, which also relate to the alleged unlawful access to the VRBO account: (1) Computer Fraud and Abuse Act (18 U.S.C. § 1030) (Count 26); and (2) Stored Communication Act (18 U.S.C. § 2701) (Count 27). (*Id.* at PageID.31–32.)

## II. Legal Standard

Because Plaintiff has been given permission to proceed without prepayment of the filing fee, the Court must screen the complaint under § 1915(e)(2)(B) to determine if the action "is frivolous or malicious," "fails

6

to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997), *overruled on different grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding that district courts must screen a complaint filed by an indigent non-prisoner under § 1915(e)(2) "before process is served or the individual has had an opportunity to amend the complaint," given that "[t]he moment the complaint is filed, it is subject to review under § 1915(e)(2)"). "The complaint must be dismissed if it falls within the requirements of § 1915(e)(2) when filed." *McGore*, 114 F.3d at 609.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Article III, § 2 extends judicial power to federal courts to adjudicate all cases arising under the laws of the United States. U.S. CONST. art. III, § 2. This grant of original jurisdiction is referred to as "federal question jurisdiction," and is currently codified in 28 U.S.C. § 1331.

A federal court must dismiss the action at any time if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). "[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).

## III.   Analysis

### A. The State-Law Claims are not Part of the Same Case or Controversy

District courts have broad discretion to determine whether to exercise supplemental jurisdiction over state-law claims. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). In deciding whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the "values of judicial economy, convenience, fairness, and comity." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). A federal court, however, is not required to exercise supplemental jurisdiction in every case in which it has the authority to do so. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

In any civil action of which a federal court has original federal question jurisdiction, the court has supplemental jurisdiction over state-law claims that are so related to the claims within the court's original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they derive from a common nucleus of operative facts." *Hucul Advert., Ltd. Liab. Co. v. Charter Twp. of Gaines*, 748 F.3d 273, 280 (6th Cir. 2014) (citation and internal quotation omitted). In *Kubala v. Smith*, the Sixth Circuit explained that "[w]here the Supreme Court has found 'a common nucleus of operative fact,' the factual connection between the state and federal claims most often involve[s] the same incident." 984 F.3d 1132, 1137 (6th Cir. 2021). The Sixth Circuit surveyed Supreme Court precedent establishing this standard:

> In *International College of Surgeons*, the Court held that the state and federal claims against Chicago "derive from a common nucleus of operative fact, . . . namely, ICS' unsuccessful efforts to obtain demolition permits from the Chicago Landmarks Commission." 522 U.S. [156,] 165 [(1997)] (quoting *Gibbs*, 383 U.S. at 725). In *Carnegie-Mellon University v. Cohill*, the Court noted that the plaintiff's "state-law claims fell

9

within the jurisdiction of the District Court to which the action was removed because they derived from the same nucleus of operative fact as the federal-law claim: CMU's dismissal of [an employee]." 484 U.S. 343, 350–51 (1988). In *Owen Equipment & Erection Co. v. Kroger*, the common nucleus of operative fact was the death of the plaintiff's husband. 437 U.S. 365, 367 (1978).

*Kubala*, 984 F.3d at 1137–38.

Here, the state-law claims regarding the real estate transaction and the federal law claims do not "involve the same incident." *See id.* at 1137. Although Plaintiff contends that the real estate dispute and the CFAA and SCA are part of the same case or controversy, the claims do not share any material facts other than the existence of the Cayman Islands property. There is no "substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state law claims." *Id.* at 1138 (citing *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986)).

Plaintiff's real estate claims include: quiet title, slander of title, trespass to land, conversion, unjust enrichment, enforcement of a registered land charge, misapplication of funds, recognition by comity of a Cayman charge order, fraud, fraudulent inducement, negligent

misrepresentation, civil conspiracy, statutory conversion, claim and delivery, intrusion upon seclusion, abuse of process, and constructive trust. (See ECF No. 1, PageID.15–31) (Counts 1–12, 14–18, 20, 22, and 24–25). These claims turn on whether the Michigan order authorized Defendants to "supply undisclosed Cayman terms, to execute Cayman instruments on Plaintiff's behalf, or to impose seller-financing." (ECF No. 1, PageID.16.) They also turn on whether the Michigan order authorized the "execution of a Cayman conveyance." (*Id.* at PageID.21.) These claims focus on whether Defendants interpreted the Michigan order correctly. (*Id.* at PageID.22–23.) In essence, Plaintiff's requests are centered on whether Defendants lawfully acquired the Cayman Islands property. Any decision on this issue would have to determine whether the parties signed a valid May 2014 real estate contract, the scope of the Washtenaw County Circuit Court's specific performance order, whether Defendants were lawfully added to the property title in the Cayman Islands Land Registry, whether the Transfer of Lease was validly registered, and whether Defendants lawfully entered and took physical possession of the property.

By contrast, the federal CFAA and SCA claims focus entirely on whether Defendants intentionally accessed Plaintiff's VRBO account without authorization. *See Abu v. Dickson*, 107 F.4th 508, 520–21 (6th Cir. 2024); 18 U.S.C. §§ 2701(a), 1030(a)(2). The facts relevant to the CFAA claim are whether "(1) Defendants intentionally accessed a computer; (2) the access was unauthorized or exceeded Defendants' authorized access; (3) through that access, Defendants thereby obtained information from a protected computer; and (4) the conduct caused loss to one or more persons during any one-year period aggregating at least $5,000 in value." *Royal Truck & Trailer Sales & Serv. v. Kraft*, 974 F.3d 756, 759 (6th Cir. 2020). The SCA incorporates the same elements but protects a somewhat different set of systems: "facilit[ies] through which an electronic communication service is provided." *Abu*, 107 F.4th at 521; 18 U.S.C. § 2701(a)(1).

The operative facts underlying the state-law real estate claims are entirely distinct from those necessary to prove the CFAA and SCA claims. The claims do not form part of the same case or controversy because the real estate claims stem from the interpretation of the Michigan order, while the CFAA and SCA claims stem from the unauthorized access to a

booking platform online account. Under the Sixth Circuit's "same incident" narrow approach, supplemental jurisdiction over the state-law claims is therefore improper. *See Kubala*, 984 F.3d at 1137–38.

Moreover, unlike the Supreme Court cases finding a common nucleus of operative fact—where all claims turned on a single core event such as a permit denial or an employee dismissal—here there is no unifying factual question that resolves both disputes. In *International College of Surgeons*, determining whether the denial of a permit was lawful resolved both the federal and state claims. 522 U.S. at 165. In *Carnegie-Mellon*, the determination of whether the dismissal of the employee was discriminatory or wrongful also resolved both the federal and state claims. 484 U.S. at 350–51. Here, while the incidents may be connected due to the broader dispute between the parties, they remain legally and factually distinct for purposes of supplemental jurisdiction.

Because the federal claims and the real estate claims do not share a common nucleus of operative facts, the Court lacks supplemental jurisdiction under § 1367(a). Even if it had such jurisdiction, however, the Court would decline to exercise it. Here, judicial economy is not served by requiring this Court to determine the scope of the Washtenaw

13

County Circuit Court's specific performance order. *See Gamel*, 625 F.3d at 951–52 (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350). The state-law claims involve a property dispute already analyzed by a state-court judge and a Cayman Islands judge. (ECF No. 1, PageID.8.) Fairness counsels against forcing Defendants to re-litigate property disputes in federal court based solely on a tangential connection to a booking platform unlawful access. (*Id.*) Finally, comity strongly favors allowing state courts to enforce and interpret their own orders.[4] (*Id.*) The values underlying supplemental jurisdiction—efficiency and convenience in resolving related disputes—are not advanced where the federal and state claims require separate trials with different evidence and different legal theories. (*Id.*) As a result, the Court lacks subject matter jurisdiction over the real estate claims because they do not form part of the same case or controversy as the CFAA and SCA claims. *See* 28 U.S.C. § 1367(a).

## B. State-Law Claims Substantially Predominate over Federal Law Claims

Even if the Court had subject matter jurisdiction over the real estate claims because the CFAA and SCA claims are somehow part of the

---

[4] The application of the *Rooker-Feldman* doctrine is analyzed below.

same case or controversy, the Court would still decline to exercise supplemental jurisdiction over the real estate claims. District courts have discretion to decline supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Supplemental jurisdiction is a doctrine of discretion justified by considerations of judicial economy, convenience, and fairness to litigants. *Gibbs*, 383 U.S. at 726; *Int'l College of Surgeons*, 522 U.S. at 173; *Gamel*, 625 F.3d at 951; *see also Detroit Mem'l Park Ass'n v. City of Detroit Bd. of Zoning Appeals*, 105 F. Supp. 3d 769, 778–79 (E.D. Mich. 2015). Under *Gibbs*, federal courts should dismiss state-law claims without prejudice when those claims substantially predominate—whether in terms of proof, scope of issues raised, or comprehensiveness of remedy sought—allowing state courts to resolve them instead. 383 U.S. at 726–27. "The

test in *Gibbs* remains the standard for [supplemental] jurisdiction."
*Kubala*, 984 F.3d at 1137.

Plaintiff's state-law claims substantially predominate over her
federal-law claims in terms of proof under the first *Gibbs* factor. In this
case, the CFAA and SCA serve as the basis for original federal
jurisdiction. The claims under those statutes require proof that
Defendants intentionally accessed Plaintiff's VRBO account without
authorization and that Plaintiff suffered damages from the typical
consequences of hacking. *Royal Truck*, 974 F.3d at 759; (ECF No. 1,
PageID.31–32.) Only four of the state-law claims relate to the federal-law
violations. (ECF No. 1, PageID.23, 27–30 (Counts 13, 19, 21, and 23).) By
contrast, the remaining twenty-one state-law claims demand extensive
evidence concerning a 2014-15 real estate transaction. Plaintiff
challenges the validity of a Michigan-law sales contract, the proceedings
and rulings in Washtenaw County Circuit Court, the propriety of a
Cayman Islands judge's decision to defer to the Michigan ruling, and the
lawfulness of property registration entries in the Cayman Islands Land
Register. These claims also require proof spanning multiple legal
theories—tort, contract, equity, and statutory remedies—all of which

turn on whether Defendants had lawfully acquired the Cayman Islands property. As a result, Plaintiff's real estate claims substantially predominate over her federal-law claims in terms of proof under the first *Gibbs* factor. *See Gerould v. Meijer, Inc.*, No. L88-234-CA5, 1990 U.S. Dist. LEXIS 11265, at 21-22 (W.D. Mich. Aug. 28, 1990) (dismissing supplemental state-law claims where they dominated over federal claims in number and required proof, and where claims did not arise from common operative facts).

Second, Plaintiff's state-law property claims substantially predominate over her federal-law claims in terms of the scope of issues presented under the second *Gibbs* factor. The real estate claims raise questions of real estate transactions under Michigan law, the scope of the state-court specific performance order, the validity of foreign property registration proceedings, and related questions regarding multiple tort and equitable theories spanning a decade of disputed property ownership. The federal claims, comparatively, present a narrow issue: whether Defendants violated two similar federal statutes by intentionally accessing without authorization Plaintiff's VRBO account and her stored communications. As a result, Plaintiff's real estate claims

substantially predominate over her federal-law claims in terms of the scope of issues presented under the second *Gibbs* factor. *See White Lake Caddis, LLC v. Charter Twp. of White Lake*, No. 25-cv-10303, 2025 U.S. Dist. LEXIS 116546, at *7-8 (E.D. Mich. June 18, 2025) (citing *Mich. Paralyzed Veterans of Am. v. Charter Twp. of Oakland, Mich.*, No. 14-14601, 2015 U.S. Dist. LEXIS 86969, 2015 WL 4078142, at *5 (E.D. Mich. July 2, 2015) (declining to exercise supplemental jurisdiction over breach of contract claim unrelated to federal discrimination claims where it would substantially expand the scope of litigation and require unnecessary factual and legal analysis).

Third, as to the comprehensive nature of the remedy sought, the real estate claims seek to unwind property transfers, order Defendants to withdraw adverse title claims, invalidate or refuse recognition of state and foreign court proceedings, recover possession of real property, impose constructive trusts and equitable liens, obtain injunctive relief requiring restoration of property, secure accounting and turnover of funds, and obtain damages for years of alleged unlawful use of the Cayman Islands property, award damages for fraud, misrepresentation, and civil conspiracy, replevin identifiable items, and award damages for intrusion.

By contrast, the federal claims seek damages that are narrowly limited, by statute and Sixth Circuit precedent, to the typical consequences of hacking—such as impairment to computer systems, response costs, and service interruption. *Royal Truck*, 974 F.3d at 760.[5] As a result, Plaintiff's state-law claims substantially predominate over her federal law claims in terms of the remedies sought under the third *Gibbs* factor. *See Bodenner v. Graves*, 828 F. Supp. 516, 518 (W.D. Mich. 1993) (dismissing without prejudice 28 state-law claims where they substantially predominated over the single federal claim).

Other federal courts in this District have declined to exercise supplemental jurisdiction over state-law claims that are unrelated to claims under the CFAA and the SCA. In *Yatooma*, the court declined to exercise supplemental jurisdiction over claims that were unrelated to the unlawful access to the plaintiff's email. *Yatooma v. Yatooma*, No. 23-cv-13050, 2024 U.S. Dist. LEXIS 207113 (E.D. Mich. Nov. 13, 2024). In that case, the plaintiff brought state-law claims regarding a business dispute

---

[5] Notably, in the complaint's prayer for relief section, Plaintiff does not seek damages under the federal-law statutes under which she sues; only a "permanent injunction . . . protecting exclusive control of VRBO and related accounts." (ECF No. 1, PageID.34, ¶ J.)

and federal claims under the CFAA, the SCA, and the Wiretap Act for unlawful access to his email account. *Id.* at *2–3. The *Yatooma* court reasoned that "[e]xercising jurisdiction over the state claims unrelated to the Email Claims would require this Court to delve into factual and legal analysis surrounding [the parties'] business relationship . . . substantially expand[ing] the scope of the litigation." *Id.* at *9. Likewise, in the present case, exercising jurisdiction over the unrelated state-law claims would require the Court to delve into the factual and legal issues surrounding the parties' real estate transaction and the Michigan state-court order. As such, the Court declines to exercise supplemental jurisdiction over the real estate claims because doing so would substantially expand the scope of the litigation beyond the alleged unlawful access to Plaintiff's VRBO account. *See id.* at *8 ("The district court should dismiss the state law claims if they will 'cause a substantial expansion of the suit beyond that necessary and relevant to the federal claims.'" (quoting *Mich. Paralyzed Veterans of Am. v. Charter Twp.*, No. 14-14601, 2015 U.S. Dist. LEXIS 86969 at *5 (E.D. Mich. July 2, 2015)).

### C. Rooker-Feldman    Doctrine    Bars    State-Court    Proceedings Review

The Court has concluded that it lacks subject matter jurisdiction over the real estate claims and declines to exercise supplemental jurisdiction over those claims. However, to the extent Plaintiff asks the Court to review the state-court proceedings, the *Rooker-Feldman* doctrine also forecloses such review.

Under the *Rooker-Feldman* doctrine, the Court does not have subject matter jurisdiction to review or reverse orders issued in state-court proceedings. *Raymond v. Moyer*, 501 F.3d 548, 550–51 (6th Cir. 2007) (holding that federal district courts lack jurisdiction under *Rooker-Feldman* to review state-court judgments in cases brought by non-prevailing parties in state-court). The *Rooker-Feldman* doctrine prevents federal courts from asserting jurisdiction over claims where the state-court decision is the source of the injury. *See Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). "Under this doctrine, federal courts lack jurisdiction to review a case litigated and decided in state court as only the United States Supreme Court has jurisdiction to correct state court judgments." *Evans v. Klaeger*, 12 F. App'x 326, 327 (6th Cir. 2001) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 & n.16 (1983)).

Determining the ownership of the Cayman Islands property is barred by the *Rooker-Feldman* doctrine. Plaintiff concedes that a Michigan court ruled in favor of Defendants and obtained a specific performance order. (ECF No. 1, PageID.8.) Plaintiff also concedes that a "Cayman judge later referred to the Michigan ruling and permitted Bradley/Chuang to be added to title." (*Id.*) Then, she attacks the state-court ruling for numerous reasons, including that "the Michigan court presumed the validity of terms never agreed to by [her]," that "specific performance cannot enforce a materially different or incomplete agreement, or compel[] owner-financing," and that the Michigan court "failed to observe that closing and lending are distinct, and no duty to lend can be imposed absent mutually executed Cayman instrument." (*Id.* at PageID.9.) Thus, Plaintiff seeks to relitigate in federal court a decade-old international real estate contract that was already adjudicated by a Michigan state court.

Plaintiff requests that the Court: "declar[e] that specific performance of the 2014 paper does not (and) did not authorize execution of Cayman-law conveyances for Plaintiff, supply undisclosed Cayman terms, or impose any duty to lend upon Plaintiff; and that 'entitlement to

close,' if assumed, does not require Plaintiff to provide seller-financing, particularly not on commercially unreasonable terms." (*Id.* at PageID.35.) In essence, Plaintiff requests that the Court review the state-court specific performance order related to the 2014 real estate transaction. At the same time, even if Plaintiff is not seeking to overturn the Michigan court order, "federal courts have no power to enforce the orders of the state courts." *Lamie v. Smith*, No. 1:12-cv-201, 2013 U.S. Dist. LEXIS 187406, at *28 (W.D. Mich. Feb. 14, 2013). These allegations and requests for relief fall squarely within the *Rooker-Feldman* doctrine. As a result, the Court lacks subject matter jurisdiction to review the case litigated and decided in state court. *See Evans*, 12 F. App'x at 327.

## IV.   Conclusion

For the reasons set forth above, the Court finds that it lacks supplemental jurisdiction over the majority of Plaintiff's state-law claims arising from the Cayman Islands real estate transaction. Accordingly, Counts 1–12, 14–18, 20, 22, and 24–25 are DISMISSED WITHOUT PREJUDICE.

Counts 13, 19, 21, 23, 26, and 27 remain in the case.

IT IS SO ORDERED.

Dated: December 30, 2025          s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 30, 2025.

                                  s/Kelly Winslow
                                  KELLY WINSLOW
                                  Case Manager